NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MID-AMERICAN SALT, LLC, <br><br> Plaintiff, <br><br> v. <br><br> MORRIS COUNTY COOPERATIVE PRICING COUNCIL, et al., <br><br> Defendants. | Civil Action No: 17-4262-SDW-LDW <br><br> **OPINION** <br><br><br> February 20, 2018 |

**WIGENTON**, District Judge.

Before this Court are 1) Defendant Morris County Cooperative Pricing Council's ("MCCPC") Motion to Dismiss Plaintiff Mid-American Salt, LLC's ("Mid-American" or "Plaintiff") Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"); 2) Municipal Defendants'[1] Motion to Dismiss Plaintiff's Amended Complaint pursuant

---

[1] This motion was initially brought by the Townships of Clinton, Montgomery, and Readington ("the CMR Defendants"), and was joined by Defendants Andover Township, Bernards Township, Bloomingdale Borough, Borough of Bernardsville, Borough of Glen Gardner, Borough of Haledon, Borough of Hawthorne, Borough of Woodland Park, City of Clifton, Flemington Borough, Frankford Township, Glen Gardner Borough, Lebanon Township, Little Falls Township, New Providence Borough, Raritan Township, Warren Township, Watchung Borough, Wayne Township, West Milford Township, and Vernon Township as well as other defendants who settled with Plaintiff prior to this Opinion being issued. (*See* Dkt. Nos. 112, 114, 132, 136, 133, 135, 137, 149, 179, 180, 187, 200, 221, 224, 239, 246, 247.)

On February 1, 2018, the CMR Defendants settled with Plaintiff. (Dkt. Nos. 248-253.). However, given that the defendants joining in the CMR Defendants' motion all filed separate notices of motion which indicated that they were relying on the legal documents and briefing filed by the CMR Defendants, this Court will treat the motion as having been brought jointly by the remaining defendants. All defendants joining in this motion or relying on its briefing will be referred to as the "Municipal Defendants."

1

to Rule 12(b)(6); 3) Defendant Wantage Township's Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"); and 4) Defendant Township of Franklin's (Somerset County) ("Franklin Township") Motion for Judgment on the Pleadings pursuant Rule 12(c).[2] Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, MCCPC's and the Municipal Defendants' Motions to Dismiss are **GRANTED** and Defendants Wantage Township and Township of Franklin's Motions for Judgment on the Pleadings are also **GRANTED**.

## I. BACKGROUND AND PROCEDURAL HISTORY

On or about July, 2016, Defendant MCCPC, a "cooperative pricing council"[3] with over 200 members, including New Jersey cities, counties, towns, townships, boroughs and "governmental contracting units," issued a solicitation for bids ("Bid Package") to provide its members with rock salt and liquid calcium chloride, which are used to treat roadways during wintery conditions. (Am. Compl. ¶¶ 1, 6-8.) The MCCPC does not itself purchase goods, but rather acts as a middleman between its members and vendors. (*Id.* ¶¶ 6, 7, 9, 10.) Although the Bid Package included estimated quantities of the treatment materials needed by MCCPC members, it also explicitly stated that bids were being solicited for "an Open-Ended contract, meaning all items are specified with an estimated quantity. There is no obligation to purchase that quantity

---

This Opinion does not consider the motions to dismiss brought by defendants who settled with Plaintiff prior to the issuance of this Opinion. (*See, e.g.*, Dkt. Nos. 139, 149, 181, 182, 188, 189, 207, 208, 214, 215, 216).

[2] Defendant Wantage Township relies on the briefing filed by the Municipal Defendants, because although the Municipal Defendants' motion was filed pursuant to Rule 12(b)(6) "the legal standard is the same for" a motion filed pursuant to Rule 12(c). (Dkt. No. 158.) Therefore, this Court's analysis of the Municipal Defendants' motion applies equally to the motions for judgment on the pleadings brought by Wantage and Franklin Townships.

[3] MCCPC was created pursuant to N.J.S.A. 40A:11-11(5).

during the contract period, and the actual quantity purchased by members of the MCCPC may vary. All quantities may be more or less than estimated. No minimum order requirements are allowed, unless stated otherwise elsewhere." (Dkt. No. 138-2 Ex. A.)[4]

Mid-American, an Indiana limited liability company, subsequently bid on and was awarded the contract (the "Contract"). (Am. Compl. ¶¶ 1, 5, Dkt. No. 138-2, Ex. A.) The terms of the Contract required that Mid-American "furnish and deliver goods and/or services to the members of the MCCPC as set forth in the Notice to Bidder, General Conditions and Instructions to Bidders, Proposal and in accordance with the specifications" set forth in the Bid Package. (Dkt. No. 138-2, Ex. A.) Ultimately, Plaintiff alleges that Defendants purchased less than "5% of the estimated tonnage awarded to Mid-American in the Contract." (*Id.* ¶ 23.)

On June 13, 2017, Mid-American filed suit against MCCPC and nearly fifty of its members, alleging that they had breached the Contract by failing to purchase amounts of rock salt and liquid calcium chloride "approximately equal to [their] estimates" and "purchased rock salt from Mid-American's competitors without conducting the competitive bidding process required by law." (Am. Compl. ¶ 1.) Mid-American also alleged that defendants breached the covenant of good faith and fair dealing and acted in bad faith under U.C.C. Article 2, by failing to purchase sufficient amounts of road treatment materials. (Am. Compl. ¶¶ 24-31.)

---

[4] Although generally, "a district court ruling on a motion to dismiss may not consider matter extraneous to the pleadings," this Court may consider documents "integral to or explicitly relied upon in the complaint without converting the motion to dismiss into one for summary judgment." *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 184 F.3d 280, 292 (3d Cir. 1999) (internal citations omitted). Here, where the bid solicitation and Contract are referenced in and integral to the claims in the Amended Complaint, this Court may consider it without converting the instant motions to those for summary judgment.

This Court will not consider the materials attached to the Certification of Peter L. Skolnik, Esq and filed by Plaintiff as part of its opposition. (*See* Dkt. No. 185-2.) Those materials are communications between the parties that are not integral to or explicitly referenced in the Amended Complaint.

Mid-American amended its Complaint on June 23, 2017. (Dkt. No. 8.) Defendants subsequently filed the instant motions to dismiss and motions for judgment on the pleadings.

## II. LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief") (internal citation omitted).

In considering a Motion to Dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (discussing the *Iqbal* standard). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

When examining a motion for judgment on the pleadings under Fed. R. Civ. Proc. 12(c), the court examines the pleadings in the same manner as it would a Rule 12(b)(6) motion to dismiss. *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008). The court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.* Judgment may only be granted if "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Id.* The court may rely only on the pleadings and documents integral to or relied on by the complaint. *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n. 5 (3d Cir. 2004).

### III. DISCUSSION

*Count One: Breach of Contract*

In order to adequately state a claim for breach of contract under New Jersey law, a plaintiff must allege: "(1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." *Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL–CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (citing *Coyle v. Englander's*, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985)); *see also Riachi v. Prometheus Grp.*, Civ. No. 17-811(SDW)(LDW), 2017 WL 2438838, at *2 (D.N.J. June 6, 2017).

As to MCCPC, Plaintiff has alleged not a single fact indicating that MCCPC breached its obligations under the Contract. Rather, Plaintiff has alleged only that the Municipal Defendants, as the potential purchasers of rock salt, failed to perform their obligations. MCCPC has no responsibility under the Contract to make purchases as the express and unambiguous terms of the Contract refer only to purchases by MCCPC "members." (Dkt. No. 138-2 Ex. A.)

5

As to the Municipal Defendants, Plaintiff argues that the Contract is a requirements contract that obligated defendants to purchase an amount "reasonably proportionate" to each MCCPC member's estimate. (Pl.'s Opp. Br. at 2 (citing N.J.S.A. 12A:2-306 (providing that under New Jersey Law, a requirements contract defines the quantity to be purchased by the good faith requirements of the buyer, "except that no quantity unreasonably disproportionate to any stated estimate . . . may be tendered or demanded")).) A requirements contract is an agreement in which "a buyer promises to buy and a seller to supply **all** the goods or services that a buyer needs during a specified period." *Black's Law Dictionary* 372 (9th ed. 2009) (emphasis added); *see also* N.J.S.A. 12A:2-306 (noting that a requirements contract intends "exclusive dealing in the kind of goods concerned"). Here, Plaintiff admits in the Amended Complaint that the Contract is "open-ended" and does not "obligate members to buy exclusively from" Plaintiff. (Am. Compl. ¶ 15.) As such, the Contract cannot be a requirements contract. Plaintiff's argument that the law "infers" that MCCPC members were required to purchase given amounts from Plaintiff and that the estimates they provided in the bidding process contained an "implicit" promise to purchase, runs counter to both Plaintiff's own pleadings and the unambiguous language of the Contract, which explicitly states that defendants had "no obligation to purchase" during the contract period. (*Id.*; Dkt. No. 138-2 Ex. A.) Plaintiff, a sophisticated business entity, took a calculated risk by entering into a contract with the MCCPC. Unfortunately for Plaintiff, that risk did not pay off. This Court, however, cannot rewrite the bargain Plaintiff made in order to create a more palatable outcome. Because Plaintiff has failed to adequately plead a claim for breach of contract, defendants' motions to dismiss and motions for judgment on the pleadings will be granted as to Count One.[5]

---

[5] This Court finds Plaintiff's reliance on *Tilcon New York, Inc. v. Morris County Cooperative Pricing Council*, 2014 WL 839122 (N.J. Super. Ct. App. Div. Mar. 5, 2014) misplaced. Not only is *Tilcon* an unpublished and non-

*Counts Two and Three: Breach of Covenant of Good Faith and Fair Dealing and Bad Faith Under U.C.C. Article 2 (N.J.S.A. 12A:2-101, et seq.)*

"[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing." *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997) (citations omitted); *see also Great Atl. & Pac. Tea Co., Inc. v. Gamestop, Inc.*, Civ. No. 11-4879 (SDW)(MCA), 2012 WL 3149102, at *6 (D.N.J. Aug. 1, 2012). To sufficiently state a claim for breach of the covenant, a plaintiff must allege that a defendant, acting in bad faith or with a malicious motive, "engaged in some conduct that denied the benefit of the bargain originally intended by the parties." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assoc.*, 864 A.2d 387, 396 (N.J. 2005) (quoting 23 *Williston on Contracts* § 63:22 (4th ed.)) (internal quotation marks omitted). "Proof of 'bad motive or intention' is vital to an action for breach of the covenant." *Brunswick Hills*, 864 A.2d at 396 (quoting *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1130 (N.J. 2001)); *Gamestop*, 2012 WL 3149102 at *6 (noting that New Jersey courts require a "malice-like element"). Similarly, the Uniform Commercial Code defines "good faith" as "honesty in fact in the conduct of the transaction concerned." N.J.S.A. 12A:1-201(19). Bad faith in this context requires "dishonesty" and a "'state of mind affirmatively operating with a furtive design or some motive of interest or ill will.'" *Lustrelon, Inc. v. Prutscher*, 428 A.2d 518, 526 (N.J. Super. Ct. App. Div. 1981) (internal citation omitted).

As to MCCPC, Plaintiff has failed to plead any facts that could support a finding that MCCPC engaged in conduct that denied Plaintiff the benefit of its bargain or that shows bad

---

precedential decision of the Superior Court of New Jersey, Appellate Division, and thus non-binding on this Court, it is also factually distinguishable. *Tilcon* involved allegations that 1) defendants had taken advantage of an asphalt supplier by ordering in excess of their estimates (or placing orders despite not having submitted estimates during the bidding process) because the cost of asphalt had more than doubled during the contract period, and 2) MCCPC failed to comply with state regulations regarding the bidding process. Neither of those scenarios is presented here.

7

motive or intent. Rather, Plaintiff points again to the Municipal Defendants' failure to purchase what it deems sufficient quantities of rock salt as compared to the estimates contained in the Bidding Packet. Even with regard to the Municipal Defendants, however, the Amended Complaint does not contain any allegations that would support a finding of malice or bad faith. A party's decision not to purchase a certain amount of goods, without more, is insufficient to show ill will or improper motive. Therefore, defendants' motions to dismiss and motions for judgment on the pleadings will be granted as to Counts Two and Three of the Amended Complaint.[6]

## IV. CONCLUSION

For the reasons set forth above, MCCPC'S Motion to Dismiss is **GRANTED**. The Municipal Defendants' Motion to Dismiss is also **GRANTED**. Defendants Wantage Township and Township of Franklin's Motions for Judgment on the Pleadings are also **GRANTED**. An appropriate order follows.

                                                      ___/s/ Susan D. Wigenton_____
                                                      **SUSAN D. WIGENTON, U.S.D.J.**

Orig:         Clerk
cc:           Leda D. Wettre, U.S.M.J.
                Parties

---

[6] The covenant of good faith and fair dealing is intended to "fill in the gaps to give efficacy to a contract as written when some terms of the contract are not specific, but 'where the terms of the parties' contract are clear, the implied covenant of good faith and fair dealing will not override the contract's express language.'" *Hillsborough Rare Coins, LLC v. ADT LLC*, Civ. No. 16-916 (MLC), 2017 WL 1731695, at *7 (D.N.J. May 2, 2017). For this reason, courts in this district have repeatedly held that a plaintiff "may not sustain a separate cause of action for breach of the covenant of good faith and fair dealing based on the same conduct that has given rise to their breach of contract claims and where the terms of the contract are clear." *Id.* (internal citations omitted). Consequently, even if Plaintiff had pled facts indicating bad faith on the part of defendants, its claim for breach of the covenant of good faith and fair dealing would be dismissed as duplicative of its breach of contract claim.